IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                      No. CR 19-1828 JB

DOMINIC GUTIERREZ,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Dominic Gutierrez' Objections to the Presentence Report and Sentencing Memorandum, filed November 3, 2020 (Doc. 50)("Objections"). The Court will hold a sentencing hearing on December 7, 2020. <u>See</u> Notice of Hearing as to Dominic Gutierrez, filed September 22, 2020 (Doc. 45). The primary issues are (i) whether the Court should sustain Gutierrez' Objections to the United States Probation Office's (USPO) application of 1 criminal history point under U.S.S.G. § 4A1.1(e) for Gutierrez' July, 2013, conviction of Conspiracy to Commit Aggravated Battery, <u>see</u> Presentence Investigation Report, ¶ 42, at 18-19, filed October 2, 2020 (Doc. 46)("PSR"), and (ii) whether the Court should sustain Gutierrez' Objections to the USPO's application of 3 criminal history points under U.S.S.G. § 4A1.1(a), because Gutierrez' incarceration term extended into the fifteen-year timeframe before the escape offense for which the Court sentences him, <u>see</u> PSR ¶ 34 and 37, at 12. The Court concludes that, a straightforward reading of U.S.S.G. § 4A1.1(e), U.S.S.G. § 4A1.1(e)'s Application Note 5, and U.S.S.G. § 4B1.2, supports that conspiracy is a crime of violence. The Court further concludes that, New Mexico Corrections Department ("NMCD") documentation verifies that Gutierrez' incarceration term extended into the fifteen-year timeframe

before Gutierrez' escape offense for which the Court sentences him.  See Dominic Gutierrez Inmate Data, filed November 9, 2020 (Doc. 51-1)("NMCD Inmate Data"); Dominic Anthony Gutierrez Offender Physical Location History, filed November 9, 2020 (Doc. 52-1)("NMCD Physical Location History").  The Court, therefore, concludes that, the USPO's application of both enhancements is not contrary to the United States Sentencing Guidelines ("U.S.S.G.").

**FACTUAL BACKGROUND**

On March 27, 2014, Gutierrez pleaded guilty to a single count of Felon in Possession of a Firearm and Ammunition in Case No. CR 13-3294 JB.  See PSR ¶ 6, at 4.  On July 9, 2014, Gutierrez was sentenced to a 71-month imprisonment term in the Bureau of Prisons ("BOP") custody, as well as a consecutive 3-year supervised release term.  See PSR ¶ 6, at 4.

While serving his custodial sentence at United States Penitentiary Atwater, a high security federal prison in Atwater, California, Gutierrez applied to the Diersen Residential Reentry Center ("RRC"), located in Albuquerque, New Mexico.  See PSR ¶ 7, at 4.  Gutierrez' application to RRC involved him reviewing and signing multiple documents.  See PSR ¶ 7, at 4.  Several documents specifically addressed that, if Gutierrez were to be accepted into the RRC, he would remain in the United States Attorney General's Custody until his release date.  See PSR ¶ 7, at 4.  The forms, in turn, outlined that Gutierrez could be prosecuted as an escapee if he were to leave the RRC for any reason without authorization.  See PSR ¶ 7, at 4.

Upon approval of his RRC application, Gutierrez arrived at the RRC on May 8, 2019.  See PSR ¶ 8, at 4.  During Gutierrez' intake process, RRC personnel warned him again he was about the potential risks of leaving the RRC without authorization.  See PSR ¶ 8, at 4.  At this time, Gutierrez reviewed and signed numerous additional documents, which addressed specifically the RRC's expectations of Gutierrez relating to contraband, employment, conduct toward staff, and

cell phone usage.  See PSR ¶ 8, at 4.   Within a matter of weeks after Gutierrez' arrival, however, RRC staff began noticing Gutierrez' increasingly brazen attitude and his disregard of RRC rules and regulations, which he had previous agreed to comply.  See PSR ¶ 9, at 4.  On May 23, 2019, for example, Gutierrez received a write-up for being in possession of an electronic cigarette.  See PSR ¶ 9, at 4.  Two days later, on May 25, 2019, Gutierrez was written-up again for winking his eye at a male employee.  See PSR ¶ 9, at 4.  On May 28, 2019, Gutierrez received a third write-up for failure to provide a job search verification form.

In addition, the USPO received information from the New Mexico Workforce Connections ("NMWC") office regarding Gutierrez repeatedly arriving at the NMWC office to apply for jobs, but then immediately leaving.  See PSR ¶ 10, at 5.  The NMWC office reported that Gutierrez would go outside the office and smoke cigarettes, or he would disappear entirely.  Gutierrez would then reportedly return to the NMWC office several hours later, at which time, he would request that his verification form be signed to give the impression that he had been at the NMWC office the entire time.  See PSR ¶ 10, at 5.

Thereafter, on June 1, 2019, RRC staff wrote Gutierrez up for a cell phone infraction, which came about after employees reviewed Gutierrez' cell phone's browser history and discovered that Gutierrez had been searching for pornography and social networking websites.  See PSR ¶ 10, at 5.  Two days later, on June 3, 2019, Gutierrez was observed to have a small bulge in his sock, which he claimed to be tissue paper.  See PSR ¶ 10, at 5.  When Gutierrez removed the item, however, RRC employees discovered that the tissue paper was actually a strip of the drug suboxone.  See PSR ¶ 10, at 5.  Gutierrez' urine sample, collected from him, thereafter, revealed a positive result for suboxone.  See PSR ¶ 10, at 5.

In addition, on the evening of June 3, 2019, the United States Marshal Service received information that Gutierrez had attempted to leave the RRC without authorization.  See PSR ¶ 11, at 5.  A routine headcount of Gutierrez' assigned dorm area revealed Gutierrez' absence, and RRC camera footage revealed him leaving RRC on foot earlier in the day.  See PSR ¶ 11, at 5.

Four months passed following Gutierrez' exit from the RRC.  See PSR ¶ 12, at 5.  Then, on October 18, 2019, law enforcement responded to a convenience store after receiving a call regarding a vehicle parked at one of the gas pumps outside.  See PSR ¶ 12, at 5.  Gutierrez, and a female, identified as Kayleigh Smith, were passed out in the vehicle.  See PSR ¶ 12, at 5.  When law enforcement initially made contact with Gutierrez, he was uncooperative, but later, his demeanor calmed.  See PSR ¶ 12, at 5.  When speaking with Gutierrez, law enforcement discovered a syringe in his immediate vicinity.  See PSR ¶ 12, at 5.  At this time, Gutierrez admitted to being in possession of multiple knives.  See PSR ¶ 12, at 5.  Gutierrez, however, was able to leave the scene because, law enforcement did not detect his accurate identity after he had provided false information to them.  See PSR ¶ 12, at 5.  Eventually, however, Gutierrez returned to the gas station on foot.  See PSR ¶ 12, at 5.  Once law enforcement discovered his true identity, Gutierrez was taken into custody on an outstanding federal warrant. See PSR ¶ 12, at 5.

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making the Guidelines sentencing ranges effectively advisory.  See United States v. Booker, 543 U.S. at 245. In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the

past, in determining whether a sentence is unreasonable."   United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four statutorily defined purposes that 18 U.S.C. § 3553(a)(2) enumerates:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B)    to afford adequate deterrence to criminal conduct;

> (C)    to protect the public from further crimes of the defendant; and

> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551(a).  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338,

349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 552 U.S. 35 (2007). The Guidelines are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] 'represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.'" United States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349). A reasonable sentence is one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d at 1264. This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 350-51 (repeating that the presumption of reasonableness "is an *appellate* court presumption" (emphasis in original); United States v. Conlan, 500 F.3d 1167, 1169-70 (10th Cir. 2007)(stating that "the government rightly concedes the district court erred in affording a presumption of reasonableness to the recommended advisory sentence," because "the guideless are presumptively reasonable only at the appellate level"). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption

in favor of the advisory[1] Guidelines sentence.  See Kimbrough v. United States, 552 U.S. at 90-91;

---

[1]Attorneys and courts often say that the "Guidelines" are advisory, Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker, 543 U.S. 220], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."), but it appears more appropriate to say that the resulting Guidelines ranges are advisory.  The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, departing from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.  The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently depart from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to depart from U.S.S.G. § 1B1.1's basic

---

Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "'in a superior position to find facts and judge their import under § 3553(a)' in each particular case." Kimbrough v. United States, 552 U.S. at 89 (quoting Gall v. United States, 552 U.S. at 51).

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment *within the range* prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

---

sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.).

submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S.
at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its
holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for *Apprendi* purposes
is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury
verdict or admitted by the defendant*." Blakely v. Washington, 542 U.S. at 303 (emphasis in
original)(citing Ring v. Arizona, 536 U.S. 584, 602 (2002); Harris v. United States, 536 U.S. 545,
563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2013)). In
United States v. Booker, however, the Supreme Court held that, because the sentencing guideline
ranges are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines
regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v.
Booker, 543 U.S. at 259). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision
[of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing
rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute
falls outside the scope of *Apprendi*'s requirement." (second alteration added by United States v.
Booker)(quoting United States v. Booker, 543 U.S. at 221)). More recently, the Supreme Court
held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's
mandatory minimum sentence. See Alleyne v. United States, 570 U.S. at 103.

    In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that
Blakely v. Washington and United States v. Booker did not change the district court's
enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United
States v. Magallanez involved plain-error review of a drug sentence in which a jury found the
defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute
methamphetamine. See United States v. Magallanez, 408 F.3d at 676. As part of its verdict, the

jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses' testimony of the various amounts that they had sold to the defendant -- attributed 1,200 grams of methamphetamine to the defendant and used that amount to calculate his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from sixty-three to seventy-eight months, based on the jury's fifty grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker made the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before," United States v. Magallanez, 408 F.3d at 685 (citation omitted). The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate the Supreme

---

[2]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704

Court's holding in *Apprendi v. New Jersey*."   United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.).   The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction."   United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).   Accord United States v. Ray, 704 F.3d at 1314.   A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum.   See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum");   United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)[3](holding that, after Alleyne v. United States, "[i]t is well-established that

---

F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).   See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).   The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.   United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).   See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level by 4 levels);   United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument);   United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

    [3]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive

sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u> . . . expands the rule from <u>Apprendi v. New Jersey</u>, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  <u>See</u> [<u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' [] And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it[,]' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt."  <u>United States v. Haymond</u>, 139 S. Ct. 2369, 2378 (2019)(quoting <u>Alleyne v. United States</u>, 570 U.S. at 112-14).  Further, the Tenth Circuit has determined that a district court could use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with <u>Alleyne v. United States</u>, "so long as the court does not use its own drug quantity finding to alter the defendant's *statutory* sentencing range."  <u>United States v. Cassius</u>, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

_____

value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored.  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes that <u>United States v. Hendrickson</u>, 592 F. App'x 699 (10th Cir. 2014)(unpublished), and <u>United States v. Leroy</u>, 298 F. App'x 711 (10th Cir. 2008)(unpublished), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

## LAW REGARDING CALCULATING CRIMINAL HISTORY

Section 4A1.1 of the U.S.S.G states, in relevant part: "The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A." U.S.S.G. § 4A1.1. Subsection (a) states: "Add **3** points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a) (bold in original). Application Note 1 to U.S.S.G. § 4A1.1 states:

> Certain prior sentences are not counted or are counted only under certain conditions:
>
> > A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period. *See* § 4A1.2(e).
> >
> > A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this subsection only if it resulted from an adult conviction. *See* § 4A1.2(d).
> >
> > A sentence for a foreign conviction, a conviction that has been expunged, or an invalid conviction is not counted. *See* § 4A1.2(h) and (j) and the Commentary to § 4A1.2.

U.S.S.G. § 4A1.1 Application Note 1. Subsection (b) to U.S.S.G. § 4A1.1 states: "Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a)." (bold in original). There is no limit to the number of points that may be added under either subsection (a) or subsection (b). See U.S.S.G. § 4A1.1 Application Notes 1, 2.

Section 4A1.2(d) handles "offenses committed prior to age eighteen." U.S.S.G. § 4A1.2(d) (title case omitted). It provides that, "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add **3** points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d) (bold in original). Application Note 7 to U.S.S.G. § 4A1.2 provides that,

- 13 -

for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

U.S.S.G. § 4A1.2 Application Note 7.

Section 4A1.2(a)(2), which announces definitions and instructions for computing criminal history, provides:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence.  Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense).  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.  Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).  According to § 4A1.2(a)(2)'s plain language, if an intervening arrest separates two sentences, the two sentences are considered separate for the purposes of criminal history calculation, even if the sentences were imposed at the same hearing.  See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283, at *11 (D.N.M. Dec. 18, 2018)(Browning, J.).  For the two prior sentences to be considered a single sentence when no intervening arrest separates the two sentences, one of § 4A1.2(a)(2)'s preconditions must apply, and the sentences must have either emanated from the same charging instrument or been imposed on the same day.  See U.S.S.G. § 4A1.2(a)(2).  "That observation is, accordingly, the end of the debate for purposes of applying § 4A1.2(a)(2)."  United States v. Bhakta, No. CR 16-1090 JB, 2017 WL 4785953, at *9 (D.N.M. Oct. 21, 2017)(Browning, J.).

Section 4A1.1(e) provides: "Add **1** point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because the sentence was treated as a single sentence, up to a total of **3** points for this subsection."  U.S.S.G.

§ 4A1.1(e) (bold in original).  Application Note 5 to U.S.S.G. § 4A1.1 provides, in relevant part:

> In a case in which the defendant received two or more prior sentences as a result of convictions for crimes of violence that are treated as a single sentence (*see* § 4A.1.2(a)(2)), one point is added under § 4A1.1(e) for each such sentence that did not result in any additional points under § 4A1.1(a), (b), or (c).  A total of up to 3 points may be added under § 4A1.1(e).

U.S.S.G. § 4A1.1 Application Note 5 (italics in original).

## ANALYSIS

Gutierrez argues that his July, 2013, Conspiracy to Commit Aggravated Battery with a Deadly Weapon conviction is not a crime of violence under U.S.S.G § 4A1.1(e), and, therefore, the USPO committed an error in applying 1 criminal history point in the PSR ¶ 42, at 18-19.  The Court disagrees with Gutierrez' argument, however, because the Court concludes that a straightforward reading of U.S.S.G § 4A1.1(e), U.S.S.G. § 4A1.1(e)'s Application Note 5, and U.S.S.G. § 4B1.2, supports that conspiracy is a crime of violence.  Next, Gutierrez contends that there is "[n]o evidence . . . available to determine when [he] completed his sentence in state custody, but he believes he had completed his sentence before the U.S. Marshal transferred him into federal custody," Objections at 7.  Gutierrez, therefore, argues that the USPO committed an error in applying 3 criminal history points under U.S.S.G. § 4A1.1(a), based on Gutierrez' incarceration term extending into the fifteen-year time frame prior to the escape offense for which the Court is sentencing him, see Objections at 7; PSR ¶ 34 and 37, at 12.  The Court disagrees with Gutierrez' contention, however, because the Court concludes that the USPO correctly applied the 3 criminal history points under U.S.S.G. § 4A1.1(a), because NMCD documentation verifies that Gutierrez' incarceration term extended into the fifteen-year timeframe prior to the escape offense for which the Court is sentencing him.  See PSR ¶ 34 and 37, at 12; NMCD Inmate Data at 2-4; NMCD Physical Location History at 1.

I.     **THE COURT OVERRULES GUITERREZ' OBJECTION TO THE USPO'S APPLICATION OF 1 CRIMINAL HISTORY POINT IN THE PSR'S ¶ 42, AT 18-19, PURSUANT TO U.S.S.G.  § 4A1.1(e), BECAUSE CONSPIRACY IS A CRIME OF VIOLENCE.**

The Court will overrule Gutierrez' Objection to the USPO's application of a criminal history point in the PSR's ¶ 42, at 18-19, pursuant to U.S.S.G. § 4A1.1(e), because a straightforward reading of U.S.S.G. § 4A1.1(e), U.S.S.G. § 4A1.1(e)'s Application Note 5, and U.S.S.G. § 4B1.2, supports that conspiracy is a crime of violence.   The USPO added 1 criminal history point in the PSR's ¶ 42, at 18-19, based on Gutierrez' July 2013 offense: Conspiracy to Commit Aggravated Battery with Deadly Weapon, see PSR ¶ 42, at 18-19.   Gutierrez was sentenced to eighteen months in custody for this offense.  See PSR ¶ 42, at 18-19.  In addition, Gutierrez served a one-year habitual enhancement, which ran "consecutive to [a] sentence imposed in case no. D-202-CR-2015-0053, and concurrent to sentence imposed in case no 1:13CR03294-001MCA."  PSR ¶ 42, at 18-19.  The PSR outlines the details of Gutierrez' July 2013 Conspiracy to Commit Aggravated Battery with Deadly Weapon offense:

> Per associated reports, on July 16, 2013, officers were dispatched to an apartment complex after receiving a report of a shooting.   During their investigation, they learned a woman, Jessica Barela, had driven her boyfriend (the defendant) and another male to the complex.  The defendant then engaged in an argument with a different male and ultimately shot at him multiple times, striking him in the buttocks area.  Ms. Barela was later detained and admitted the defendant was responsible for the shooting.  The following day, the victim also identified the defendant as the shooter.  An arrest warrant was consequently issued for his arrest, which was served upon him being detained on July 22, 2013, for the new federal charges in case no. 1:13CR03294-001JB.

PSR ¶ 42, at 19**.**  The PSR subsequently notes that, although, "[t]ypically, this conviction would receive no criminal history points, as there was no intervening arrest between" Gutierrez' before the May, 2013, conviction for Aggravated Fleeing a Law Enforcement Officer, see PSR ¶ 41, at 19, and his July 2013 conviction for Conspiracy to Commit Aggravated Batter with Deadly

Weapon, "under U.S.S.G. § 4A1.1(E), one point is warranted for each prior sentence resulting from a conviction of a crime of violence which did not receive any points under (a), (b), or (c)." PSR ¶ 42, at 19.

In his  Objections, Gutierrez asserts that the USPO's application of 1 criminal history point in the PSR's ¶ 42, at 19, pursuant to U.S.S.G. § 4A1.1(e), was in error, because, according to Gutierrez, his relevant conviction triggering the additional point under the Guidelines -- Conspiracy to Commit Aggravated Batter with Deadly Weapon -- is not a crime of violence, see Objections at 4.  "By analogy," according to Gutierrez, "conspiracy can never qualify as a 'crime of violence,' because it is not an enumerated offense and does not qualify under the force clause." Objections at 4 (quoting U.S.S.G. § 4A1.1(E)) and citing United States v. Chandler, 743 F.3d 648 (9th Cir. 2014)(implying that Nevada conspiracy to commit robbery does not satisfy the force clause and is not an enumerated offense under the Armed Career Criminal Act ("ACCA") of 1994; holding that it qualified under the residual clause); United States v. Gore, 636 F.3d 728 (5th Cir. 2011)(holding that Texas conspiracy to commit aggravated robbery does not satisfy the force clause of the ACCA because the only elements that must be found by the jury to convict are that the defendant agreed to commit robbery and engaged in one of the acts enumerated in the robbery statute, which may or may not satisfy the force clause); United States v. Fell, 511 F.3d 1035, 1037 (10th Cir. 2007)("Because Colorado law does not require proof of the use, attempted use, or threatened use of physical force to sustain a conviction for conspiracy to commit second degree burglary, Fell's prior conviction does not qualify as a violent felony pursuant to § 924(e)(2)(B)(i). Neither does it qualify under the first clause of § 924(e)(2)(B)(ii), since it does not involve the use of explosives and it is not burglary, arson, or extortion."); United States v. King, 979 F.2d 801, 803 (10th Cir. 1992)("Because the crime of conspiracy in New Mexico is complete upon the

formation of the intent to commit a felony, and does not require that any action be taken on that intent, the elements of a conspiracy to commit a violent felony do not include the threatened use of physical force.  We therefore hold that a conspiracy conviction does not qualify as a 'violent felony' under the first statutory definition of § 924(e)(2)(B)(i).")).  The Court disagrees, however, with Gutierrez' analogy argument here, because a plain reading of U.S.S.G. § 4A1.1(e), U.S.S.G. § 4A1.1(e)'s Application Note 5, U.S.S.G. § 4B1.2(a), and U.S.S.G. § 4B1.2(a)'s Application Note 1, demonstrates that conspiracy is a crime of violence.

The Court first references U.S.S.G.  § 4A1.1, which governs the addition of points to a defendant's sentence, based on the defendant's criminal history.  Under U.S.S.G. § 4A1.1(e), the court must "[a]dd 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of **3** points for this subsection."  U.S.S.G. § 4A1.1(e)(emphasis in the original).  U.S.S.G.'s § 4A1.1 (e)'s Application Note 5 then references U.S.S.G. § 4B1.2's relevant definitions, stating that  "[f]or purposes of this guideline, 'crime of violence'  has the meaning given that term in § 4B1.2(a)."  U.S.S.G.'s § 4A1.1 (e), n.5 (citing U.S.S.G. § 4B1.2(a)).  U.S.S.G. § 4B1.2(a), in turn, states:

> (a)     The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> > (1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2)     is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

Importantly, U.S.S.G.'s § 4B1.2(a)'s Application Note 1, further clarifies that, "[f]or purposes of this guideline -- "'*Crime of violence*' and '*controlled substance offense*' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2(a), n. 1 (emphasis in original).

Based on the straightforward language in U.S.S.G. § 4A1.1(e), U.S.S.G. § 4A1.1(e)'s Application Note 5, U.S.S.G. § 4B1.2(a), and U.S.S.G. § 4B1.2(a)'s Application Note 1, the Court concludes that a "crime of violence" under U.S.S.G. § 4A1.1(e), includes conspiracy. The USPO, therefore, correctly assessed Gutierrez' July 2013 Conspiracy to Commit Aggravated Battery conviction as a "crime of violence." PSR, ¶ 42, at 19. Accordingly, the Court overrules Gutierrez' Objection to the USPO's application of a criminal history point, pursuant to U.S.S.G. § 4A1.1(e) in the PSR's ¶ 42, at 19.

## II.   THE COURT OVERRULES GUITERREZ' OBJECTION TO THE USPO'S APPLICATION OF 3 CRIMINAL HISTORY POINTS IN THE PSR'S ¶¶ 34 AND 37, AT 12, BECAUSE GUITERREZ' INCARCERATION TERM EXTENDED INTO THE FIFTEEN-YEAR TIMEFRAME BEFORE THE ESCAPE OFFENSE FOR WHICH THE COURT IS SENTENCING HIM.

The Court overrules Gutierrez' objection to the USPO's application of 3 criminal history points in the PSR's ¶¶ 34 and 37, at 12, pursuant to U.S.S.G. § 4A1.1(a), because NMCD documentation verifies that Gutierrez' incarceration term extended into the fifteen-year timeframe before the escape offense for which the Court is sentencing him. See NMCD Inmate Data, at 2-4; NMCD Physical Location History at 1.

The PSR's ¶ 34, at 12, states that, "[b]ecause the defendant's term of incarceration extended into the fifteen-year time frame prior to the instant offense, this conviction receives criminal history points under U.S.S.G. § 4A1.1(a)." PSR ¶ 34, at 12. The PSR explains further:

On July 3, 2002, the defendant's probation was revoked and he was sentenced to a term of imprisonment. He was released on parole on March 10,

2003, and he absconded from supervision again on June 9, 2003.  He was then arrested on new federal charges on July 12, 2003, after he was found to be a felon in possession of a firearm (case no. 1:03CR02168-001MCA).  On August 6, 2003, his parole was revoked, and he was returned to prison, and on June 3, 2003, he was released into federal custody.

PSR ¶ 34, at 12.

Gutierrez asserts that the USPO's addition of 3 criminal history points in the PSR's ¶¶ 34 and 37, at 12, pursuant to U.S.S.G. § 4A1.1(a), for his convictions from 2000, was in error.  See Objections at 6.  Specifically, Gutierrez contends the USPO committed an error in the 3-point criminal history addition, because there is no evidence available to support that Gutierrez was released from NMCD custody on June 3, 2004 -- exactly fifteen years to the day before the escape offense for which the Court is sentencing him.  See Objections at 6.  Gutierrez, rather, "believes he had completed his sentence before the U.S. Marshal transferred him into federal custody," which, according to Gutierrez', "is significant because the new crime of escape was committed on June 3, 2019, which was allegedly 15 years to the date of his release from state to federal custody on June 4, 2004, according to the presentence report."   Objections at 6.

The Court concludes that the USPO is correct in adding 3 criminal history points to Gutierrez' sentence, pursuant to U.S.S.G. § 4A1.1(a), because NMCD documentation verifies that Gutierrez' incarceration term extended into the fifteen-year timeframe before the escape offense for which the Court is sentencing Gutierrez, as required for the term to trigger a 3-point addition under U.S.S.G. § 4A1.1(a).  U.S.S.G. § 4A1.1(a) directs for the addition of "3 points for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a) (emphasis in original).  U.S.S.G. § 4A1.1(a)'s Application Note 1, in turn, clarifies:

Certain prior sentences are not counted or are counted only under certain conditions:

A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extends into this fifteen-year period.  See § 4A1.2(e)

A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this subsection only if it resulted from an adult conviction. See § 4A1.2(d).

A sentence for a foreign conviction, a conviction that has been expunged, or an invalid conviction is not counted. See § 4A1.2(h) and (j) and the Commentary to § 4A1.2.

U.S.S.G. § 4A1.1(a), Application Note 1.

Although Gutierrez asserts that there is "no evidence . . . to determine when [he] completed his sentence in state custody," Objections at 7, the USPO references his discussions with NMCD and the United States Sentencing Commission to verify Gutierrez' imprisonment timeline and release date.  See Addendum to the Presentence Report at 2, filed November 9, 2020 (Doc. 51)("PSR Addendum")("Prior to the PSR being disclosed to the Court, this exact issue was discussed at length with the NMCD, as well as with the United States Sentencing Commission."). During the USPO's discussions with the NMCD and the United States Sentencing Commission, the NMCD confirmed that Gutierrez "was released from the Southern New Mexico Correctional Facility ("SNMCF") on June 3, 2004, exactly fifteen years prior to the instant offense."  PSR Addendum at 2.  In addition, the United States Sentencing Commission advised the USPO that Gutierrez' "convictions are to both receive criminal history points, as there was an intervening arrest between the two offenses."  PSR Addendum at 2.  On October 14, 2020, Gutierrez and the USPO received further documentation from NMCD's Office of General Counsel that verified Gutierrez' release date on June 3, 2004.  See NMCD Inmate Data at 2-4; NMCD Physical Location Data at 1.  The NMCD Inmate Data and the NMCD Physical Location Data support conclusively that Gutierrez' incarceration term of incarceration extended into the fifteen-year timeframe before the escape offense for which the Court is sentencing Gutierrez, as applicable to trigger a 3-point

criminal history addition under U.S.S.G. § 4A1.1(a).  Because Gutierrez does not submit any evidence that undermines the NMCD's documentation related to his June 3, 2004, release dates, see NMCD Inmate Data at 2-4; NMCD Physical Location Data at 1, the Court concludes, based on a preponderance of the evidence, that the USPO's application of 3 criminal history points, pursuant to U.S.S.G. § 4A1.1(a), to Gutierrez' sentence, is correct.  Accordingly, the Court overrules Gutierrez' Objection to the PSR's ¶¶ 34 and 37, at 12.

**IT IS ORDERED** that: (i) Gutierrez' Objection to the USPO's application of 1 criminal history point in the PSR's ¶ 42, at 18-19, under U.S.S.G. § 4A1.1(e), is overruled; and (ii) Gutierrez' Objection to the USPO's application of 3 criminal history points in the PSR's ¶¶ 34 and 37, at 12, under U.S.S.G. § 4A1.1(a), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Rumaldo R. Armijo
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Sylvia A. Baiz
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

        *Attorney for the Defendant*